# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 27, 2018

Lyle W. Cayce
Clerk

No. 17-20278

_____

In the Matter of:  GOODRICH PETROLEUM CORPORATION; GOODRICH PETROLEUM COMPANY, L.L.C.,

>           Debtors

_____

FALLON FAMILY, L.P.,

>           Appellant

v.

GOODRICH PETROLEUM CORPORATION; GOODRICH PETROLEUM COMPANY, L.L.C.,

>           Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before DAVIS, JONES, and HIGGINSON, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In 2014, appellant Fallon Family, L.P. (the "Fallon Family"), as part of a settlement agreement with appellees Goodrich Petroleum Corporation and Goodrich Petroleum Company, L.L.C. (collectively, "Goodrich"), executed a ratification of a previously disputed mineral lease in favor of Goodrich.  In March 2016, Goodrich filed a Chapter 11 bankruptcy proceeding.  Although the

settlement agreement required Goodrich to make substantial cash payments over time to the Fallon Family, the recorded ratification of the lease did not reflect this fact but only indicated that good and sufficient consideration had been paid for the ratification.  The Fallon Family argued that because the bankrupt Goodrich failed to make payments under the promissory note made part of the settlement agreement, the Fallon Family had the right to dissolve the settlement agreement on grounds of non-payment, thus divesting Goodrich of its interest in the lease.  We agree with the bankruptcy court that when Goodrich filed for bankruptcy, the debtor-in-possession became vested under 11 U.S.C. § 544(a) with all the rights and powers of a bona fide purchaser of the real property rights of Goodrich, including the ratified lease.  The lease as ratified may not be dissolved for nonpayment of the obligations in the settlement agreement because the public record reflects that consideration had been fully paid, and a third party was not placed on notice of the remaining payments.  We therefore AFFIRM.

## I.

On September 8, 1954, the Fallon Family's predecessor-in-interest, Silas F. Talbert, executed a mineral rights lease (the "Lease") covering a 487-acre tract of land in Caddo and DeSoto Parishes, Louisiana (the "Property").  The Lease provided for a five-year primary term and a secondary term to continue "as long thereafter as oil, gas or other mineral is produced" on the Property. The Lease was properly recorded in the conveyance records of both parishes.

On February 28, 2012, the Fallon Family petitioned the 42nd Judicial District Court in DeSoto Parish to terminate the Lease and to assess damages and attorney's fees against Goodrich and other parties.  Specifically, the Fallon Family alleged that Goodrich had ceased continuous operations on three units of the Property, in violation of the terms of the Lease.  On October 2, 2014, the Fallon Family recorded two Notices of Pendency of Action (collectively, the "Lis

Pendens") in the conveyance records of Caddo and DeSoto Parishes, which attached the Lease and evidenced the Fallon Family's suit to terminate the Lease.[1]  On October 6, 2014, the eve of trial, the Fallon Family agreed with Goodrich and the other defendants to resolve all controversies relating to the Lease.

The settlement was confirmed in a written agreement (the "Settlement Agreement") between the Fallon Family, Goodrich, and other defendants.  The Settlement Agreement spelled out the terms of the parties' October 15, 2014 compromise.  In the Settlement Agreement, the Fallon Family agreed to ratify the Lease and to release its claims against Goodrich in consideration for Goodrich's paying $650,000 within ten business days of the Settlement Agreement and executing a promissory note (the "Promissory Note") in the amount of $1,000,000.  The Promissory Note was to be paid in $100,000 bi-annual installments, with the first installment due on October 15, 2015.  The $650,000 was wired to the Fallon Family and the Promissory Note duly delivered.  The Amendment and Ratification of Oil, Gas and Mineral Lease (the "Lease Ratification") was recorded in the conveyance records of both Caddo and DeSoto parishes, with an effective date of October 15, 2014.  The recorded Lease Ratification, in relevant part, reads:

> NOW, THEREFORE, for the promises and covenants exchanged below, and other good and valuable consideration exchanged by the Parties on or near this date, the receipt and sufficiency of which is hereby acknowledged, the Parties agree [to the listed promises and covenants].

The stipulated promises and covenants in the Lease Ratification are: (1) that except as to land released by prior agreement, the Lease is "hereby

---

[1] A notice of lis pendens alerts a third party to a suit "affecting the title to, or asserting a mortgage or privilege on, immovable property." LA. CODE CIV. PRO. ANN. art. 3751.  Under Louisiana law, it must be recorded. *Id.*

No. 17-20278

affirmed and ratified in its entirety, and remains in full force and effect;" (2) that the Lease "never ceased to be in full force and effect;" (3) that the Lease is severed by unit for maintenance; and (4) that an additional royalty clause is added to the Lease.

On October 15, 2015, Goodrich paid the first $100,000 installment on the Promissory Note; when the second installment came due on April 15, 2016, Goodrich failed to make the payment, leaving a $900,000 outstanding balance on the Promissory Note. On the same day, it filed voluntary chapter 11 bankruptcy proceedings in the Southern District of Texas bankruptcy court.

During the course of bankruptcy proceedings, the Fallon Family filed an emergency motion seeking to compel assumption or rejection of the Settlement Agreement as an 11 U.S.C. § 365 executory contract. Had the Fallon Family succeeded in this argument, Goodrich would have been obligated either to perform fully the terms of the Settlement Agreement and thus pay the remainder of the debt or to reject the Settlement Agreement and thus relinquish any interest in the Lease Ratification. Alternatively, the Fallon Family sought to dissolve the Settlement Agreement in its entirety, putting both parties back in their pre-Settlement Agreement positions and thereby stripping Goodrich of its interest in the Lease. Goodrich, in opposition, argued that 11 U.S.C. § 544(a) allowed it to rely, as a bona fide purchaser, on representations in the recorded Lease Ratification that full consideration had been paid thereby preventing dissolution.

On July 26, 2016, following the receipt of Goodrich's objection and a motion hearing, the bankruptcy court denied the Fallon Family's motion, finding that, though the Promissory Note was integrated into the Settlement Agreement: (1) the Settlement Agreement was not an executory contract under 11 U.S.C. § 365 that Goodrich could be compelled to assume or reject;

4

No. 17-20278

and (2) the Fallon Family's dissolution rights were not effective as to Goodrich pursuant to 11 U.S.C. § 544.[2]  On appeal, the district court affirmed.

The Fallon Family timely lodged this appeal.

## II.

We exercise jurisdiction pursuant to 28 U.S.C. § 158(d)(1).  "We review the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court."[3]  Thus, we review the bankruptcy court's findings of fact for clear error and its legal conclusions de novo.[4]

## III.

Central to this case is the interplay between 11 U.S.C. § 544(a), commonly referred to as the "strong arm" provision of the Bankruptcy Code, and the Louisiana Public Records Doctrine, Louisiana Civil Code article 3338. As a threshold matter, the Fallon Family argues that 11 U.S.C. § 544(a) only permits a debtor-in-possession (1) to avoid the transfer of property of the debtor; or (2) to avoid the obligations incurred by the debtor.  In other words, the Fallon Family argues that these are the only strong-arm abilities Goodrich has to keep the bankruptcy estate intact.

These powers, the Fallon Family argues, are irrelevant in determining whether the Fallon Family can dissolve the Settlement Agreement because dissolution is a separate Louisiana statutory right.  We agree with Goodrich that the Fallon Family's reading of 11 U.S.C. § 544(a) is much too narrow.

---

[2] The 11 U.S.C. § 365 executory contract issue was not urged on appeal, and we do not address it here.

[3] *In re Entringer Bakeries, Inc.*, 548 F.3d 344, 348 (5th Cir. 2008) (quotation marks omitted).

[4] *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003).

No. 17-20278

Because Goodrich, as debtor-in-possession, "occupies the shoes of a trustee in every way" under the Bankruptcy Code,[5] Goodrich's abilities as debtor-in-possession are defined by 11 U.S.C. § 544(a).[6] The relevant text of 11 U.S.C. § 544(a) reads as follows:

> **(a)** The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> . . .
>
> **(3)** a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.[7]

Section 544(a) does not merely bestow upon a debtor-in-possession the ability to avoid either the transfer of a debtor's property or its obligations; instead, a debtor-in-possession is endowed with "*the rights and powers*" of, inter alia, a "bona fide purchaser of real property."[8] In other words, the Bankruptcy Code creates a legal fiction affording a debtor-in-possession the

---

[5] *In re Hughes*, 704 F.2d 820, 822 (5th Cir. 1983) (citing 11 U.S.C. § 1107(a)). The debtor, though left in possession by the judge, does not operate the business as it did before the filing of the petition, unfettered and without restraint. Rather, a debtor in possession holds its powers in trust for the benefit of creditors. *Id.* (alterations and quotation marks omitted).

[6] *See generally* 11 U.S.C. § 544(a).

[7] *Id.* In advancing its argument, the Fallon Family briefly mentions 11 U.S.C. § 544(a)(1), which endows a trustee with the powers of a judicial lien creditor, but neither Goodrich nor the Fallon Family urge any argument regarding the import of judicial lien creditor status.

[8] *See id.* § 544(a)(3) (emphasis added). "Statutory construction . . . begins with the plain language of the statute." *In re Dale*, 582 F.3d 568, 573 (5th Cir. 2009).

No. 17-20278

abilities it would have as a bona fide purchaser of the debtor's interests in immovable property[9] at the time the bankruptcy is filed.[10]

## IV.

"While the Bankruptcy Code creates the status of a hypothetical bona fide purchaser, state law defines that status."[11] The Fallon Family argues that debtors-in-possession and bona fide purchasers are not third persons "under Louisiana's law of registry with respect to the ratification of a mineral lease pursuant to a settlement agreement," and thus that Goodrich remains responsible for its obligations under the unrecorded terms of the Settlement Agreement. We agree with Goodrich that this argument is foreclosed by our decision in *In re Zedda*, which concluded that 11 U.S.C. § 544(a)(3) bona fide purchasers are third persons under the Louisiana Public Records Doctrine.[12]

The Louisiana Public Records Doctrine requires certain types of instruments affecting immovables to be filed in the public records in order to be effective against third persons.[13] It states:

---

[9]

> In civil law systems things are divided into movables and immovables. This division was known in Roman law and other ancient legal systems and has been adopted in modern civil codes. In common law jurisdictions, property is divided into personal property and real property, but these terms may be taken as roughly equivalent to the civilian notions of movables and immovables.

A. N. YIANNOPOULOS, 2 LA. CIV. L. TREATISE, PROPERTY § 7:1 (5th ed. 2017) (footnotes omitted).

[10] 11 U.S.C. § 544(a)(3).

[11] *In re Hamilton*, 125 F.3d 292, 298 (5th Cir. 1997).

[12] *See* 103 F.3d 1195, 1201–02 (5th Cir. 1997).

[13]

> The contours of the doctrine have not been fully defined, but its general outlines are settled. The three basic tenets of the doctrine are: an acquirer of immovable property is bound by recorded instruments affecting the property; any personal knowledge that the acquirer may have outside the records is immaterial; and a bona fide purchaser for value is entitled to rely on the absence from the public records of instruments that must be recorded.

A. N. YIANNOPOULOS, 4 LA. CIV. L. TREATISE, PREDIAL SERVITUDES § 6:22 (4th ed. 2017).

7

The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:

(1) An instrument that transfers an immovable or establishes a real right in or over an immovable.

(2) The lease of an immovable.

(3) An option or right of first refusal, or a contract to buy, sell, or lease an immovable or to establish a real right in or over an immovable.

(4) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.[14]

Louisiana Civil Code article 3343 defines a third person as one "who is not a party to or personally bound by an instrument."[15] The article clarifies that, "[a] person who by contract assumes an obligation or is bound by contract to recognize a right is not a third person with respect to the obligation or right or to the instrument creating or establishing it."[16]

In *In re Zedda*, a panel of this Court considered the intersection of the Louisiana Public Records Doctrine with 11 U.S.C. § 544(a) where the trustee of a bankruptcy estate claimed that certain property was part of, and could be administered by, the estate.[17] In its analysis, the Court found that, "[f]or purposes of Louisiana's Public Records Doctrine, a creditor or a purchaser is a third person."[18] Applying that doctrine to § 544(a), the Court concluded that it

---

[14] LA. CIV. CODE ANN. art. 3338.

[15] *Id.* art. 3343.

[16] *Id.*

[17] 103 F.3d at 1200. The Louisiana provision the Court addressed there has changed slightly in form since the *In re Zedda* decision but has not changed in substance. *Compare* LA. REV. STAT. ANN. § 9:2721 (1996), *with* LA. CIV. CODE ANN. art. 3338.

[18] *In re Zedda*, 103 F.3d at 1202.

was "clear" that a trustee was "a third person for purposes of the public records when he assume[d] the status of a hypothetical creditor or a bona fide purchaser as of the commencement of the case."[19]  This conclusion, the Court continued, was "supported by the Trustee's correct assertion that *he occupies the position of a third party* who is entitled to rely on the public records."[20]  As noted above, Goodrich exercises the identical powers and duties as a trustee.[21] *In re Zedda*, then, stands for the proposition that Goodrich, as a debtor-in-possession, is considered a third person acting as a bona fide purchaser for the purposes of the Louisiana Public Records Doctrine.[22]

The Fallon Family attempts to avoid the result reached in *In re Zedda*, contending that Article 128 of the Louisiana Mineral Code dictates that Goodrich, as an assignee of a mineral lease, "is fully and directly responsible for the performance of Goodrich's prepetition obligations under the Settlement Agreement."

Article 128 provides:

> To the extent of the interest acquired, an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessee's obligations.[23]

Article 128, on its face, defines the obligations of a sublessee or an assignee; because Goodrich is neither, Article 128 does not apply here.[24]  It is true that

---

[19] *Id.*

[20] *Id.* (emphasis added).

[21] *See In re Hughes*, 704 F.2d at 822.

[22] *See In re Zedda*, 103 F.3d at 1202.

[23] La. Rev. Stat. Ann. § 31:128.

[24] *See id.*  Consequently, the case submitted by the Fallon Family in oral argument, *Singer v. Continental Illinois Energy Development Corp.*, has no relevance to the facts here. *See* 786 F.2d 647 (5th Cir. 1986).  Our facts would parallel those in *Singer*, if, *before* filing for bankruptcy, Goodrich had assigned its interest in the Lease Ratification to another party and then, after Goodrich's filing, the Fallon Family had attempted to enforce the terms of the Settlement Agreement against *that* third party, which would have none of the 11 U.S.C. § 544(a)(3) protections and would not be a bona fide purchaser.  *See generally id.*  As those

Goodrich, prior to initiating bankruptcy proceedings, was burdened by the responsibilities described in the Settlement Agreement. However, in donning the mantle of bona fide purchaser permitted by § 544(a)(3), Goodrich is a hypothetical purchaser of the Lease Ratification subject to the obligations detailed therein.[25]

The Fallon Family also argues that Louisiana Civil Code article 3343 precludes third-person status for Goodrich. This argument fails as well. As described above, Article 3343 merely clarifies that third persons are not those who, "*by contract* assume[] an obligation or [are] bound *by contract* to recognize a right."[26] Goodrich as debtor-in-possession is considered to be a separate entity from Goodrich as debtor. And, as a bona fide purchaser of the Lease Ratification, Goodrich has not contractually assumed obligations outside the recorded Lease Ratification.[27]

In addition, both the registry laws and the Louisiana Mineral Code recognize the existence and rights of a third person who may be held only to the terms of a mineral lease—or to the terms of a document modifying it—as

---

circumstances vary significantly from today's case, the Fallon Family's reliance on *Singer* is misplaced. *See id.*

[25] *See* 11 U.S.C. § 544(a)(3). Of note, Goodrich does not contest that the Fallon Family has a viable claim against the bankruptcy estate for the consideration outlined in the Settlement Agreement and, more specifically, the $900,000 debt outstanding on the Promissory Note. However, Goodrich considers this to be separate, unsecured debt.

[26] LA. CIV. CODE ANN. art. 3343 (emphasis added).

[27]*See id.* The cases the Fallon Family cites in its briefing are readily distinguishable. *See Sonnier v. Conner*, 998 So. 2d 344, 359 (La. Ct. App. 2008) (citing LA CIV. CODE ANN. art. 961 and LA. CIV. CODE ANN. art. 3343) (standing for the proposition that heirs that have accepted succession are not innocent third persons as to the debts of an estate under Louisiana Civil Code article 3343 and the applicable law of succession); *J& R Enters.-Shreveport, L.L.C. v. Sarr*, 989 So. 2d 235, 241 (La. Ct. App. 2008) (standing for the straightforward precept of Louisiana Civil Code article 3343: that a party who assumes a lease is not a third person). The Fallon Family finally argues that because Louisiana law permits the use of memoranda and notices of lease, not all obligations between the parties need to be recorded in the public records. *See* LA. REV. STAT. ANN. § 9:2742. Unlike notices or memoranda of lease, however, the Lease Ratification does not purport to be an incomplete statement of the parties' status.

they are described in the conveyance record.[28]  The Louisiana Public Records Doctrine explicitly directs that the lease of an immovable and *any documents altering the interest in it* must be recorded to be effective against a third person.[29]  Further, Article 18 of the Mineral Code instructs that "*[a]ll* sales, contracts, and judgments affecting mineral rights are subject to the laws of registry."[30]  And, a mineral lease is one of the "basic" mineral rights under Louisiana law.[31]  The fact that the immovable in this case is a mineral lease ratification, then, does not affect Goodrich's status as a third person under the Louisiana Public Records Doctrine.[32]  Whether dissolution is permissible notwithstanding the lack of notice to a third person is a separate question we discuss below.

## V.

Having determined that Goodrich, as a debtor-in-possession, qualifies as a third person under the Louisiana Public Records Doctrine, we address the next question presented:  May a party dissolve an agreement when it will disrupt an interest in immovable property protected by the Louisiana Public Records Doctrine?

The Fallon Family argues that under Louisiana Civil Code article 3339, "a termination of rights that depends on the occurrence of a condition [such as breach of contract] need not be recorded to affect third parties," and thus that the right of dissolution obtains even when recorded documents do not indicate that an immovable interest may be affected. [33]  In support, the Fallon Family points to Article 3081 of the Louisiana Civil Code, which governs dissolution of

---

[28] *See* LA CIV. CODE ANN. art. 3338; LA. REV. STAT. ANN. § 31:18.

[29] LA. CIV. CODE ANN. art. 3338.

[30] LA. REV. STAT. ANN. § 31:18 (emphasis added).

[31] *Id.* § 31:16.

[32] *See* LA CIV. CODE ANN. art. 3338; LA. REV. STAT. ANN. § 31:18.

[33] *See* LA. CIV. CODE ANN. art. 3339.

11

a compromise, to argue that the right to dissolution is effective against third persons regardless of recordation because the right to dissolve a contract "arises by operation of law."[34] Goodrich responds that, because the recorded Lease Ratification represents that full consideration has been paid, the Fallon Family cannot dissolve the Settlement Agreement in order to divest Goodrich of its interest in the Lease.

Under longstanding Louisiana legal principles, "[n]either fraud, nor want of consideration, nor secret equities between the parties, who have placed on the public records a title valid upon its face, can be urged against the bona fide purchaser for value, who has acted on the faith of such recorded title."[35] A number of Louisiana state and federal cases analogous to today's case have concluded that, where the conveyance record indicates that consideration has been paid in full, a third party is not susceptible to the remedy of dissolution, which would be available between the original contractual parties.[36] In *LeBlanc v. Bernard,* the plaintiff sued the rehabilitator of an insurance company, seeking the dissolution of a sale of immovable property where the recorded conveyances showed the purchase price had been paid but, in fact, it was undisputed that the price had not been paid.[37] The Louisiana appellate court reasoned that "[t]he operation of the right of dissolution against a third party becomes inconsistent with the public records doctrine when . . . the

---

[34] *See id.* art. 3081.

[35] *Schwing Lumber & Shingle Co. v. Ark. Nat. Gas Co.*, 116 So. 851, 852 (La. 1928) (quoting *Cole v. Richmond*, 100 So. 418, 423 (La. 1924)); *see also* DIAN TOOLEY-KNOBLETT & DAVID GRUNING, 24 LA. CIV. TREATISE, SALES § 15:12 (2017).

[36] *See e.g., LeBlanc v. Bernard*, 554 So. 2d 1378, 1381 (La. Ct. App. 1989); *cf. City Bank & Tr. Co. v. Caneco Constr., Inc.*, 341 So. 2d 1331, 1333 (La. Ct. App. 1976) ("[T]he record showed an authentic act of sale reciting that the full amount of the purchase price was paid in cash. Under these circumstances, the trial court did not err in excluding parol evidence varying the recital that the full amount of the purchase price was paid in cash . . . .").

[37] *LeBlanc*, 554 So. 2d at 1379–81. A rehabilitator under the Louisiana Insurance Code acts as the trustee to a Louisiana bankruptcy estate. *See generally* LA. REV. STAT. ANN. § 22:2008.

public records reflect that the [purchase] price [for an immovable right] *has* been paid."[38]  Thus, the court held that "the right of dissolution cannot lie in this case if defendant can rely on the public records."[39]

In *In re Leeward Operators, LLC*, an analogous case in the bankruptcy context, two oil companies assigned a mineral lease to an oil well operator by letter agreement.[40]  The assignment was recorded—without any mention of the letter agreement—in the parish conveyance records.[41]  The operator failed to make the payment provided for in the agreement and subsequently filed for bankruptcy under Chapter 11.[42]  During bankruptcy proceedings, the bankruptcy trustee sought to have the creditors' privileges ranked, and the oil companies sought dissolution of the agreement assigning the lease and requiring consideration.[43]  The bankruptcy court refused to dissolve the agreement, finding that, "if the public record shows that the purchase price was paid, the seller's dissolution rights are not effective against third parties."[44]

The Fallon Family here faces obstacles similar to those faced by the plaintiffs in *LeBlanc* and *In re Leeward*.  Goodrich, as debtor, has not paid the Promissory Note; however, Goodrich, as debtor-in-possession, and thus a hypothetical bona fide purchaser of the Lease Ratification, may avoid the result of dissolution because the public record indicates that consideration has been fully paid.[45]  The Fallon Family has not cited a single authority where

---

[38] *LeBlanc*, 554 So. 2d at 1381.

[39] *Id.*

[40] No. 09-50260, 2012 WL 1073173, at *1 (Bankr. W.D. La. Mar. 29, 2012).

[41] *See id.* at *1, *4.

[42] *Id.* at *1.

[43] *Id.* at *1–2.

[44] *Id.* at *3 (citing YIANNOPOULOS, 2 LA. CIV. L. TREATISE, PROPERTY § 233; *LeBlanc*, 554 So. 2d at 1381).

[45] *See id.*; *LeBlanc*, 550 So. 2d at 1381.  In fact, the Public Record doctrine might protect Goodrich from being stripped of the Lease Ratification even were the record silent as

No. 17-20278

dissolution has been allowed where the defendant is a bona fide purchaser and the public record shows that the purchase price has been fully paid.[46] Following long-standing Louisiana law, then, we conclude that because the Lease Ratification shows the purchase price has been paid, the Fallon Family cannot dissolve the Settlement Agreement.[47]

The Fallon Family protests that it is ambiguous here whether the purchase price was, indeed, paid. It argues that the record here militates in favor of a different result than that reached for example, in *In re Leeward*, because the language in the recorded assignment there showed that consideration had been paid "cash in hand," whereas here the Lease Ratification recites that promises and covenants have been exchanged. This is not so.

---

to the purchase price being paid. *See In re D'Anna*, 548 B.R. 155, 167–68 (E.D. La. 2016) ("Third persons are not allowed to rely on what is contained in the public records but can instead rely on the *absence* from the public record of those interests that are required to be recorded." (internal quotation marks and alterations omitted)). However, Louisiana law generally appears to require positive affirmation that the purchase price was paid in the records where parties seek to maintain an interest in immovable property. *See* YIANNOPOULOS, *supra* note 9, PROPERTY § 9:33.

[46] The Fallon Family argues that *Robertson v. Buoni*, a Louisiana Supreme Court case, stands for the proposition that the right to dissolve an agreement is not dependent on the existence of a recorded security device. *See* 504 So. 2d 860 (La. 1987). However, in that case, unlike today's case, there was no third party present. *See id.* at 863 (Lemmon, J., concurring). The concurrence noted that "[w]hen a sale of immovable property has been recorded, the seller's right to dissolution, as against a subsequent purchaser, may depend on whether the recorded original sale indicates that the price has or has not been paid." *Id.* The court in *LeBlanc* applied the concurrence's reasoning, and it has been influential in persuasive secondary sources. *See LeBlanc*, 554 So. 2d at 1380–81 (citing *Robertson*, 504 So. 2d at 863 (Lemmon, J., concurring)); TOOLEY-KNOBLETT, *supra* note 35, § 15:12 (citing *Robertson*, 504 So. 2d at 863 (Lemmon, J., concurring)).

[47] Indeed, the Louisiana Supreme Court, in 1928, applied this principle in the land exchange context, prohibiting the dissolution of a contract when the immovable property concerned had passed into the hands of a third party, and the recorded document showed that the parties had acknowledged the exchange to be complete. *Schwing Lumber & Shingle Co.*, 116 So. at 851–52.

No. 17-20278

As explained above, the bankruptcy court in *In re Leeward* concluded that the creditor oil companies could not dissolve, to the trustee's detriment, a letter agreement outlining the consideration to be paid for the recorded assignment of mineral leases when the public record showed that the purchase price had been paid.[48]  The language in that recorded assignment read:

> NOW, THEREFORE, in consideration of the sum of One Hundred Dollars ($100), cash in hand paid, and of other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, PRIME OIL COMPANY, L.L.C., . . . does hereby convey, assign, sell, set-over and deliver unto LEEWARD OPERATORS, L.L.C., . . . 87.50% of the right, title and interest of [Prime] in and to [the] Leases . . . [49]

Contrary to the Fallon Family's argument, this language strongly resembles that in its Lease Ratification, which reads, in part:

> NOW, THEREFORE, for the promises and covenants exchanged below, and other good and valuable consideration exchanged by the Parties on or near this date, the receipt and sufficiency of which is hereby acknowledged, the Parties agree [to the listed promises and covenants].

The recorded assignment in *In re Leeward*, as the Lease Ratification here, specifically acknowledges "the receipt . . . and sufficiency" of the "valuable consideration" detailed by the documents.[50]  The "promises and covenants" in the Lease Ratification here were "exchanged below," by Goodrich and the Fallon Family "on or near" October 15, 2014, the effective date of the Lease Ratification.  Thus, a third person would understand that exchange was complete on the day the Lease Ratification was effective.  Also, the Lease Ratification specified that the Lease had never ceased, so all outstanding

---

[48] *In re Leeward*, 2012 WL 1073173, at *3 (citing YIANNOPOULOS, 2 LA. CIV. L. TREATISE, PROPERTY § 233; *LeBlanc*, 554 So. 2d at 1381).

[49] *Id.* at *4.

[50] *See id.*

15

encumbrances upon the interest would appear to a third party to have been resolved.[51]  Additionally, the Lease Ratification makes no reference whatever either to the Settlement Agreement or to the Note.  The Fallon Family's claim that consideration is insufficient is inconsistent with the recorded instrument and therefore impermissible under Louisiana Civil Code article 3342, which prohibits a party to a recorded instrument from later contradicting the instrument to the prejudice of a third person.[52]  Because the language in the Lease Ratification represents to a third person that consideration had been fully paid, Goodrich is shielded from the effects of dissolution.[53]

## VI.

The Fallon Family offers two final arguments regarding the nature of the Settlement Agreement with which we summarily dispense.  First, though the argument is not well developed in briefing, the Fallon Family argues that, because the Promissory Note and Lease Ratification are fully integrated into the Settlement Agreement, Goodrich may not use 11 U.S.C. § 544(a)(3) to treat the Lease Ratification as a bona fide third-party purchaser. Whether an agreement's integration and the presence of integration clauses affect the ability of parties to the contract to point to parol evidence when contract disputes arise.[54]  We find no authority, nor has the Fallon Family cited any,

---

[51] The bankruptcy court sums up the effect of the language as follows:
If a hypothetical third party had examined the property records, the third party would have seen the Lis Pendens referencing the 1954 Lease, then a Lease Ratification which specifically indicated that all claims regarding the 1954 Lease were released and waived.  The Lease Ratification indicated further that consideration—analogous to the purchase price in *Leeward*—had been given and acknowledged as sufficient.  The Fallon Family exercising their right to dissolve the Settlement Agreement based on a failure of consideration would contradict the recorded instrument acknowledging receipt and sufficiency of consideration.  This is not allowable under Louisiana law.

[52] *See* LA. CIV. CODE. ANN. art. 3342.

[53] *See, e.g., In re Leeward*, 2012 WL 1073173, at *4.

[54] *See Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 564–67 (5th Cir. 2005).

suggesting that integration of the Promissory Note and Lease Ratification into the unrecorded Settlement Agreement would put a hypothetical bona fide purchaser on notice of the terms of the Settlement Agreement. It would not.

The Fallon Family also argues that the Settlement Agreement cannot be "parsed into its components, so that Goodrich may retain the benefits and reject the burdens." However, in the bankruptcy context, obligations agreed to in pre-petition non-executory contracts are often never met in full. The purpose of the Bankruptcy Plan is to meet these commitments as fully as possible while still granting Goodrich an opportunity to rebuild its business.[55] Unfortunately, creditors often do not receive the full amount of their claims; however, this is a feature, not a flaw, of the design of the bankruptcy system.

## VII.

For the reasons above, we AFFIRM the judgment of the bankruptcy court.

---

[55] *See Stellwagen v. Clum*, 245 U.S. 605, 617 (1918) ("The federal system of bankruptcy is designed not only to distribute the property of the debtor . . . fairly and equally among his creditors, but as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life . . . .").