STEWART, J.
| Michael Ray Carr (“Carr”) appeals a judgment decreeing that a mortgage granted by Oaktree Apartments, A Limited Partnership (“O.A.”), in favor of Gib-sland Bank & Trust Company (“Gibsland”) in 2008 primes Carr’s judicial mortgage securing a 1999 judgment against O.A. Because we find that the public records provided sufficient notice to Gibsland of Carr’s judicial mortgage and that the trial court erred in ranking Gibsland’s mort *795 gage ahead of Carr’s judicial mortgage, we reverse.
FACTS
In a 1992 suit styled “Michael Ray Carr v. Oaktree Apartments and Cross Country Managment, Inc.,” Carr sued for damages caused by the discharge of raw sewage from O.A. into a pond on his property. The facts are set forth in Carr v. Oake Tree Apartments, 34,539 (La.App.2d Cir.5/9/2001), 786 So.2d 230, writ denied, 2001-1682 (La.9/21/01), 797 So.2d 675, in which we affirmed the trial court’s judgment in favor of Carr.
On July 26, 1999, Carr filed the judgment rendered by the 26th Judicial District Court against “Oaktree Apartments” and CCM in the amount of $128,223.51, plus legal interest, in the mortgage records for Webster Parish.[1] Thereafter, the judgment was twice amended to address errors in calculating the award of expenses and the application of legal interest to the award.
On April 20, 2000, Carr filed the “Amended Judgment” captioned “Michael Ray Carr v. Oak Tree Apartments and Cross Country Management, Inc.,” in the mortgage records. On August 2, 2000, Carr filed 12the “Corrected Amended Judgment” captioned “Michael Ray Carr v. Oake Tree Apartments and Cross Country Management, Inc.” in the mortgage records. Though the captions have different spellings of O.A., both refer to it as “Oaktree” in the judgment language.
On October 30, 2003, Carr filed a “Partial Release of Judgment” in the mortgage records. Carr granted the partial release as to two tracts of land owned by O.A., designated in the release as “Oaketree,” in exchange for a payment of $80,000. The partial release sets forth the three judgments filed in the mortgage records along with the registry, book, and page number for each filing. Recorded in the mortgage records along with the partial release on the same date and at the same time were a collateral mortgage and a collateral assignment of leases and rents given by O.A., designated as “Oaketree,” to Gibsland, apparently as security for financing the purchase of the property that was the subject of Carr’s partial release.
On July 31, 2008, O.A. purchased two tracts of land in the Smithwood subdivision in Webster Parish. Gibsland provided financing and obtained a mortgage on the property. On August 6, 2008, the cash sale deed was filed in the conveyance records and Gibsland’s collateral mortgage was filed in the mortgage records. Both refer to O.A. as “Oaketree.” However, the Webster Parish Recording Pages included with Gibsland’s closing documents have “Oaktree” as vendee on the cash sale deed and as mortgagor on the collateral mortgage.[2]
|sOn April 21, 2009, Carr filed a “Notice of Reinscription” in the mortgage records. Then, on April 23, 2009, he filed a judgment granted on April 22, 2009, reviving his judgments against O.A.
Soon thereafter, Carr filed a motion for examination of the judgment debtor and for issuance of a writ of fieri facias to execute his judgment by seizing the Smith-wood property. Upon receiving a notice of the pending sheriffs sale of the Smithwood *796 property, Gibsland filed a petition of intervention to enjoin the sale and to have its mortgage declared first in rank. Gibsland also contested the validity of Carr’s judgment against O.A., asserting that the judgment against “Oaktree Apartments” had not been properly reinscribed and that no judgment had ever been rendered against “Oaketree.”
At the hearing on September 29, 2009, Gibsland called Melanie McCullough, the attorney who rendered the title opinion in connection with O.A.’s purchase of the Smithwood property. McCullough testified that she was engaged by Irene Desa-dier on behalf of O.A. for the title work.[3] McCullough rendered the title opinion on July 31, 2008, to Gibsland. The cash sale deed and mortgage were executed that same day. After the filing of the cash sale deed and mortgage in the conveyance and mortgage records on August 6, 2008, McCullough’s office forwarded the closing documents to Gibsland. In addressing her title examination, McCullough testified that she searched the Louisiana Secretary of State’s website and found a listing for “Oaketree Apartments.” McCullough stated that Desadier confirmed |4that “Oaketree” was the business name. McCullough then conducted an online search of the Webster Parish mortgage records using “Oaketree” to check for any liens or judgments that would prevent Gib-sland from obtaining a first ranking mortgage. She found no judgment under the name “Oaketree.” On cross-examination, McCullough testified that she did not ask Desadier whether there were any outstanding judgments against O.A., nor did Desadier mention any judgments. McCullough also testified that she had no involvement in the 2003 transaction between O.A. and Gibsland.
The parties stipulated to the testimony of R.O. Machen, Gibsland’s closing officer in connection with the loan to O.A. for the Smithwood property. According to the stipulation, Gibsland required a first mortgage on the property, received the closing documents from McCullough’s law firm, and made the loan relying on those documents. Machen had no personal knowledge of any prior judgment that would affect the property.
The trial court framed the issue as whether Carr’s judicial mortgage was valid as to a third party who relies on the public records when through some error the judgment debtor’s name was not listed properly in the judgment. The trial court found that McCullough’s search of the public records under the correct name “Oaketree” revealed no mortgages, judgments, or liens in that name. Because Carr’s judgments were not in the name “Oaketree,” the trial court concluded that Carr’s judicial mortgage was not effective as to Gibsland as a first ranking mortgage. After judgment was rendered in favor of Gibsland declaring its mortgage to be first in rank ahead of Carr’s judicial mortgage, Carr appealed.
1,.DISCUSSION
Carr raises two issues on appeal. First, he argues that the trial court erred in failing to apply former La. R.S. 9:2728 and in finding his judicial mortgage to be ineffective as to Gibsland because of the variations in the spelling of O.A.’s name in the judgments. Second, he argues that the trial court erred in failing to find that the partial release filed in the mortgage records provided sufficient notice of his judicial mortgage to Gibsland. This matter requires us to determine whether Carr’s judicial mortgage is effective as to *797 third persons and whether it ranks ahead of Gibsland’s subsequently filed mortgage.
Creditors’ claims are ranked based on the priority of their registry in the appropriate public records. Three Rivers Farm Supply, Inc. v. Webber, 617 So.2d 1220 (La.App. 3d Cir.1993). When Carr filed the judgments against O.A. in the mortgage records, the public records doctrine was set forth at La. R.S. 9:2721 et seq. Acts 2005, No. 169, effective July 1, 2006, added, amended, revised, and repealed numerous provisions relating to the recordation of documents in the mortgage and conveyance records. At present, the public records doctrine is generally set forth at La. C.C. art. 3338 et seq. Under the public records doctrine, a third person need only look to the public records to determine adverse claims. Voelkel v. Harrison, 572 So.2d 724 (La.App. 4th Cir. 1990), unit denied, 575 So.2d 391 (La.1991). The primary purpose of the public records doctrine is the protection of third persons from unrecorded interests. Cimarex Energy Co. v. Mauboules, 2009-1170 (La.4/9/10), 40 So.3d 931; Camel v. Waller, 526 So.2d 1086 (La.1988). Because it does not create rights but rather denies the effect of certain rights unless they are recorded, the public records doctrine is referred to as a negative doctrine. Id.
The public records doctrine provides that an instrument involving immovable property shall be effective against third persons only from the time it is filed for registry in the parish where the property is located. See La. C.C. art. 1839; La. C.C. art. 3338; La. R.S. 9:2721(A), repealed by Acts 2005, No. 169, § 8, eff. July 1, 2006.[4] Third persons are deemed to have constructive knowledge or notice of the existence and contents of recorded instruments affecting immovable property. McCurdy v. Bloom’s Inc., 39,854 (La. App.2d Cir.6/29/05), 907 So.2d 896; Voelkel v. Harrison, supra.
Though not directly applicable to the issues before us, guidelines for determining when a recorded instrument places a third party on notice that further inquiry about a property title or description is called for are instructive for determining what constitutes sufficient notice of an adverse claim in the public records. Jurisprudence states:
Where a recorded instrument has language that fairly puts a third person on inquiry as to the title and he does not avail himself of the means and facilities at hand to obtain knowledge of the true facts, he is to be considered as having bought at his own peril.
| g Voelkel, 572 So.2d at 727, and cases cited therein. Availing oneself of the “means and facilities at hand” means examining any necessary public records. Id.
Additionally, an inaccurate or faulty description of real property in a mortgage or deed may suffice as notice to third parties if the description is “adequate to enable the court to locate and identify the property with certainty, and if it is not so inaccurate or faulty as to be misleading.” Id., and cases cited therein.
These guidelines indicate that errors in a recorded document do not automatically preclude the effectiveness of the document against third persons. The is *798 sue is whether a recorded document provides “sufficient notice” to a third party. Id. Determinations concerning the sufficiency of notice in the public records must be decided on a case-by-case basis. Id. Such determinations are factual.
The record shows that Carr filed the initial judgment against O.A. in the mortgage records on July 26,1999, and subsequently filed the amended judgment, the corrected amended judgment, and the 2003 partial release. Of particular interest to this court in reviewing the record and arguments of counsel is the partial release, which was filed under the name “Oaketree Apartments” as mortgagor. The partial release sets forth Carr’s judgment, amended judgment, and corrected amended judgment as well as the registry, book and page numbers indicating where these documents are recorded in the mortgage records.
1 ^McCullough testified that she did a computer search of the mortgage records using the name “Oaketree” and came across no judgment listed in that name. However, McCullough’s testimony does not explain why she neither found nor examined the partial release filed in the mortgage records under the mortgagor name “Oaketree.” Even though McCullough did not examine the partial release, a third person examining the public records is held to have constructive notice of the existence and contents of recorded instruments affecting immovable property. The partial release pertains to a judicial mortgage that affects immovable property owned by O.A. and future property upon acquisition by O.A. See La. C.C. art. 3303. As such, the judicial mortgage that was the subject of the partial release would affect the Smithwood property. The fact that the partial release was indexed under the mortgagor name “Oaketree” should have alerted McCullough to examine the recorded document to determine whether it pertained to a judgment against O.A. that could be enforced against the Smith-wood property. Examination of the partial release would have then provided notice to McCullough of Carr’s judicial mortgage.
McCullough testified that she was engaged by Irene Desadier on behalf of O.A. to do the title examination in connection with O.A.’s purchase of the Smithwood property. McCullough prepared a title opinion and issued it to Gibsland, who then relied on it to close on the loan to O.A. Though Gibsland asserts that it had no prior notice of Carr’s judicial mortgage against O.A., the record belies its assertion. The record shows that Carr granted the 2003 partial release the day before O.A. granted |flGibsland a “Collateral Assignment of Leases and Rents” and a “Collateral Mortgage” over the property against which Carr released his claim. All three documents were then filed in the public records on the same date (October 30, 2003) and at the same time (10:45:54 AM).[5] In light of the obvious connection between the partial release and the financing provided by Gibsland to O.A. in 2003, Gibsland’s argument that it had no notice of the partial release or of Carr’s judicial mortgage is dubious. Reliance on Ma-chen’s stipulated testimony to show Gib-sland’s „ lack of knowledge is misplaced. The stipulation established only that Ma-chen had no personal knowledge of any prior judgment.
The partial release was filed in the mortgage records under “Oaketree,” the *799 very named used by McCullough in her examination of the mortgage records. As third persons, McCullough and Gibsland are deemed to have constructive knowledge of the existence and contents of recorded instruments involving immovable property. The partial release clearly sets forth Carr’s recorded judgments against O.A. and establishes the existence of his judicial mortgage. The judicial mortgage burdens future property upon acquisition by the judgment debtor. La. C.C. art. 3303. As such, it burdens the Smithwood property upon acquisition by O.A. The existence of the partial release in the public records provided sufficient notice to Gib-sland of Carr’s judicial mortgage affecting property owned by O.A.
110We find that the trial court’s failure to consider the import of the partial release in determining whether Gibsland had notice of Carr’s judicial mortgage was manifest error. The trial court erred in ignoring the partial release and focusing only on the issue of whether errors in the spelling of O.A. rendered Carr’s judicial mortgage ineffective as to Gibsland or second in rank as to its mortgage.
We further find that the trial court erred in failing to apply the applicable law governing name variations in mortgages. The public records laws address the effectiveness as to third parties of recorded instruments that have variations in a party’s name. Former La. R.S. 9:2728, which was in effect when Carr’s judgments were recorded but was repealed by Acts 2005, No. 169, stated:
A. A conventional or collateral mortgage shall not be deemed inferior and subordinate to another security device solely by reason of:
(1) Its inclusion of, or failure to contain, the middle name or initial of the mortgagor; or
(2) The use of any reasonable variation of the mortgagor’s name, including but not limited to initials or abbreviations for the mortgagor’s given names.
B. A mortgage certificate by a clerk of court to determine if an immovable is burdened with any encumbrance shall include a search of the public records for a variation by middle name or initial of the owner’s recorded name.
Of specific relevance in this statute is the language that a mortgage shall not be deemed inferior or subordinate to another security device because of the use of any reasonable variation of the mortgagor’s name.
In When Act 2005, No. 169 repealed R.S. 9:2728, it enacted La. C.C. art. 3353, effective July 1, 2006, which states:[6]
A recorded instrument is effective with respect to a third person if the name of a party is not so indefinite, incomplete, or erroneous as to be misleading and the instrument as a whole reasonably alerts a person examining the records that the instrument may be that of the party.
Carr filed suit against “Oaktree Apartments.” The captions of the initial judg- *800 merit, the amended judgment, and the corrected amended judgment referred to Oaktree, Oak Tree, and Oake Tree, respectively. However, the language of each judgment referred only to “Oaktree.” The defendant, O.A., has never contested the validity of Carr’s judgments against it based on the various spellings of its name. In fact, included in the record before us is a post-trial memorandum on behalf of O.A. from the initial litigation between Carr and O.A. in which O.A.’s counsel refers to “Oaktree Apartments” as being the correct name. This is not a case in which the wrong party or a nonexistent party was sued. Rather, this a case in which incorrect spellings have apparently been used for a party’s name throughout the course of litigation. This was done by both Carr and O.A. Therefore, the mistake is not solely attributable to Carr.
We observe that the Webster Parish Recording Pages included in the closing documents forwarded by McCullough to Gibsland name “Oaktree,” |12rather than “Oaketree,” as the vendee on the cash sale deed for O.A.’s purchase of the Smithwood subdivision property and as the mortgagor on the collateral mortgage. A printout from the Secretary of State’s website showing “Oaketree Apartments” as the registered name also shows that its general partner goes by the name “Oaktree.” These observations demonstrate the close similarity of the names and the fact that persons associated with O.A. apparently use similar spellings for closely related business entities. We cannot say whether this is to avoid or create confusion. McCullough’s search of the Secretary of State’s website should have alerted her to search the mortgage records under both “Oaketree” and “Oaktree.”
We find that the names Oaktree, Oak Tree, and Oake Tree as used in the captions of the judgments are clearly reasonable variations of Oaketree and are not so indefinite, incomplete, or erroneous as to be misleading. Under both La. R.S. 9:2728 and La. C.C. art. 3358, Carr’s judgments are effective as to third persons. Because the trial court erred in failing to apply former R.S. 9:2728 or La. C.C. art. 3353, its factual conclusion that Carr’s judicial mortgage ranks second to Gibsland’s mortgage is manifestly erroneous.
We note that Gibsland asserted that no judgment has ever been rendered against “Oaketree.” This is akin to a collateral attack on Carr’s judgments against O.A. However, no basis exists for a collateral attack due to misspellings of O.A.’s name. The supreme court has stated, “No principle of law has received greater and more frequent sanction, or is more 113deeply imbedded in our jurisprudence, than that which forbids a collateral attack on a judgment or order of a competent tribunal, not void on its face ab initio.” Nethken v. Nethken, 307 So.2d 563, 565 (La.1975).
Lastly, the record shows that Carr timely reinscribed his judgment in accordance with La. C.C. art. 3362 by filing a notice of reinscription on April 21, 2009, within 10 years of the date of the judgment. It also appears from the record that Carr timely revived his judgment against O.A. in accordance with La. C.C.P. art.2031. The ex parte motion for revival was signed by the trial court on April 22, 2009, and recorded in the mortgage records on April 23, 2009.
For all these reasons, we find that Carr’s judicial mortgage is valid as to Gib-sland, and that it is first in rank ahead of Gibsland’s mortgage.
CONCLUSION
The judgment of the trial court is vacated, and judgment is rendered in favor of Michael Ray Carr finding that his judicial *801 mortgage ranks first ahead of Gibsland’s mortgage. Costs are assessed against Gibsland.
REVERSED AND RENDERED.

. All subsequent references to the mortgage records mean the Webster Parish mortgage records.

. The recording page certifies that a document has been filed. It sets forth the name of the person who filed the document; the names of the first parties to the document; the type of document and its index; its file (registry), book, and page number; and the date and time recorded.

. Desadier is an owner of O.A.

. R.S. 9:2721(A) stated:
A. No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease, or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated. Neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.

. The recording pages show that the partial release, assignment, and mortgage were received from Merritt Chastain for filing. This appears to be the same name as one of the witnesses to the assignment and mortgage.

. Section 9 of Act 2005, No. 169, addresses the effect of the new laws on previously recorded instruments and states in relevant part:
Nothing in this Act shall be deemed to diminish the effect of, or render ineffective, the recordation of any instrument that was filed, registered, or recorded in the conveyance or mortgage records of any parish before the effective date of this Act. Any instrument that is filed, registered, or recorded before the effective date of this Act, that is not given the effect of recordation by virtue of existing law, shall be given such effect on the effective date of this Act that it would have if it were first filed on that effective date.