BROWN, Chief Judge.
| ]This is an action for legal malpractice filed by plaintiff, Gibsland Bank and Trust Company (“Gibsland”), against the lawyer who prepared a title opinion, her law firm and their malpractice insurer. The issue in this writ grant to docket is whether the suit filed by Gibsland against defendants, Kitchens, Benton, Kitchens & Black (APLC), Melanie F. McCullough, and First Mercury Insurance Company, was timely. Finding that Gibsland did not bring its action for malpractice within the time constraints set forth in La. R.S. 9:5605, we reverse and render.

Facts and Procedural Background

On July 31, 2008, Melanie F. McCullough, an attorney with Kitchens, Benton, Kitchens & Black (hereinafter “the law firm”), issued a title opinion on property *531 owned by Oaketree Apartments, L.L.C., which was being used to secure a primary mortgage loan from Gibsland. The title opinion indicated that there were no mortgages or encumbrances on the property. A 1999 judicial mortgage by a third party, Michael Carr, on the debtor’s property had not been found in the title search. Based upon the law firm’s representations in the title opinion that there were no prior liens or encumbrances on Oaketree’s property, Gibsland granted Oaketree the loan.
On July 31, 2009, Gibsland sent the law firm a letter stating that Carr had filed suit against Oaketree to satisfy his 1999 money judgment by seizing the property and forcing a sheriffs sale. According to Carr, his judicial mortgage gave him a first lien position on the property. The bank’s letter to the law firm stated that “The Title Opinion prepared for the Bank by your firm and signed by Melanie F. McCullough ... did not reflect 12evidence of this existing judgment.” Carr’s intention to force a sheriffs sale was “cause for immediate concern to the Bank. The Bank is formally requesting research and remediation by Kitchens, Benton, Kitchens & Black on this situation in order to best protect the interest of the Bank.”
In August 2009, the law firm advised Gibsland that because the debtor’s name occurred in several documents and in the Webster Parish Mortgage Records incorrectly as “Oaktree” rather than “Oake-tree” Apartments, the bank’s position was defensible. The law firm also told Gib-sland at that time that the firm’s legal malpractice insurer had been contacted for appointment of legal representation.
In September 2009, Gibsland intervened in Carr’s suit and petitioned to enjoin the sheriffs sale and have the bank’s mortgage declared primary to Carr’s mortgage. A hearing was held on September 29, 2009. Carr introduced evidence that Oaketree had applied for refinancing with Gibsland in 2003, and that Carr had filed a “Partial Release of Judgment” in the mortgage records in 2003, in which Carr granted Oaketree a partial release of judgment as to two tracts of land in exchange for $80,000. Carr also introduced evidence that on the same date and at the same time that the partial release was recorded in the mortgage records, a collateral mortgage and a collateral assignment of leases and rents by “Oaketree” to the bank were also recorded in the mortgage records. The trial court ruled in favor of Gibsland, finding that its 2008 mortgage primed Carr’s 1999 money judgment. On appeal, this court reversed, finding that the public records provided sufficient notice of Carr’s judicial mortgage, which was ranked |-¡ahead of the bank’s mortgage, and of the 2003 partial release, both of which should have been discovered by the law firm in its 2008 title research. See Carr v. Oaktree Apartments, 45,514 (La.App.2d Cir.08/11/10), 46 So.3d 793, writ denied, 10-2092 (La.11/12/10), 49 So.3d 896.
On April 11, 2011, Gibsland filed the instant malpractice action. Defendants filed an exception of prescription, claiming that the one-year prescriptive period set forth in La. R.S. 9:5605, which begins to run from the date that a reasonable person was or should have been aware of the act(s) of malpractice, began running when the bank discovered that its interest in the Oaketree property was in jeopardy due to Carr’s lawsuit.
The law firm further asserted that Gib-sland’s July 31, 2009, letter, in which the bank stated its “immediate concern” about Carr’s claim and noted that the firm’s title opinion had not reflected Carr’s judicial mortgage, was evidence1 of the point in time when the bank became aware of potential damage caused by the law firm’s error.
*532 In opposition to the exception of prescription, the bank claimed that in order to file a claim for legal malpractice, there had to be a negligent act and resulting damages. In the instant case, according to the bank, no damages were incurred until August 11, 2010, the date that the Second Circuit made an adverse ruling against Gibsland. The bank suggested that the malpractice was not evident, and therefore there was no viable claim, until the ruling by this court, because until that time, the trial court had upheld the bank’s position as holding the primary mortgage on the property. Therefore, prescription began to run from the date of the Second Circuit’s | ^ruling, August 11, 2010, and Gib-sland’s suit against defendants, which was filed on April 11, 2011, was timely.
The exception was heard on June 23, 2011. The bank’s president, Thomas Martin, and the bank’s attorney in the summary proceeding, Jonathan Stewart, testified at this hearing. Martin testified that he was concerned when he received the title opinion from the law firm because he knew that there was a prior judgment against Oaketree, but when he asked whether the judgment was still in place, McCullough advised him that it “wasn’t found.” Martin identified Gibsland’s July 31, 2009, letter to the law firm, in which the bank acknowledged its awareness of Carr’s intent to seize the property and that the title opinion did not reflect the existing judgment. Martin and Stewart agreed that the July 31, 2009, letter demonstrated the bank’s notice that its interest in the property was in jeopardy due to the law firm’s oversight. Martin further admitted that once the bank was initially notified of the malpractice, the bank could have sought further legal advice from another attorney to determine whether the law firm had actually committed malpractice, but chose not to do so. Stewart stated that he had notice of the potential malpractice claim in August 2009 when Kitchens advised him that he had notified his law firm’s malpractice insurer of the matter and had requested representation. Stewart also testified that he knew that Carr was appealing the lower court’s ruling no later than the end of December 2009, and that he was aware that the ruling could be overturned on appeal.
| sThe trial court denied defendants’ exception of prescription, agreeing with Gib-sland, finding that prescription began running from the date that damages were incurred, which was August 11, 2010, the date of the Second Circuit’s adverse ruling. Therefore, since suit had been filed on April 11, 2011, it was timely. Defendants sought supervisory review with this court, which was denied on the showing made. The supreme court granted defendants’ writ application and remanded the matter to the trial court for reconsideration of its ruling in light of the supreme court’s recent decision in Jenkins v. Starns, 11-1170 (La.01/24/12), 85 So.3d 612.
In Jenkins, supra at 627-28, the supreme court held that the continuous representation rule, an application of the doctrine of contra non valentem, cannot apply to suspend commencement of either the one-year or the three-year peremptive period set forth in La. R.S. 9:5605, and the trial and appellate courts erred in applying this rule to suspend the commencement of the peremptive period on the plaintiffs malpractice suit, which was perempted as it was not brought within one year of the date she should have discovered her attorney’s malpractice. Before reaching that conclusion, however, the court first discussed the issue of discovery in a legal malpractice case and found that in Jenkins, the one-year peremptive period (or the date upon which the plaintiff had constructive knowledge of facts which would entitle her to bring suit) began when she *533 received notice of a default judgment entered against her due to her attorney’s mistake. Id. at 621. Addressing the issue of damages, the court further observed that the plaintiff in Jenkins suffered damage when she received notice of the money | ^judgment against her and learned that the trial court had ruled in her opponent’s favor. Id.
On July 12, 2012, the trial court held a hearing to reconsider its ruling in light of Jenkins, supra. The trial court, however, focusing solely on the fact that the instant case is not one of continuous representation, found that Jenkins was inapplicable and that the bank’s claim was not per-empted as the first reasonable notice of the law firm’s malpractice was the Second Circuit’s August 11, 2010, adverse ruling, and suit was filed within one year of that date. The court thus denied defendants’ exception of prescription, and judgment was signed on July 18, 2012. Defendants filed a supervisory writ, which this court granted to docket.

Discussion

Under La. R.S. 9:5605(A), an action for legal malpractice must be brought within one year of the date of the act, omission, or neglect, or within one year of the date of discovering the act, omission, or neglect and within three years of the date of the act, omission, or neglect. Jenkins, supra. In the instant case, the “act, omission, or neglect” that forms the basis of the bank’s claim for legal malpractice is the law firm’s July 81, 2008, title opinion which failed to include a prior existing judicial mortgage or encumbrance on the subject property. See Commonwealth Land Title Ins. Co. v. Jones, 06-1277 (La.App. 3d Cir.02/07/07), 948 So.2d 1243, writ denied, 07-0515 (La.04/27/07), 955 So.2d 693. The critical inquiry, however, is the date upon which Gibsland discovered or should have discovered the law firm’s mistake, which resulted in damage to the bank, |7and the relationship between the two. As noted by the court in Jenkins, 85 So.3d at 620-21, in the context of a legal malpractice claim, the “date of discovery” from which prescription or peremption begins to run is the date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person that he is the victim of a tort and to state a cause of action against the defendant. See also Teague v. St. Paul Fire and Marine Ins. Co., 07-1384 (La.02/01/08), 974 So.2d 1266, 1275. In other words, the date of discovery is the date the negligence was discovered or should have been discovered by a reasonable person in the plaintiffs position. Id.
The following analysis is excerpted from Jenkins, 85 So.3d 612, 621-22:
In this case, the peremptive period began to run when the plaintiff knew or should have known of the existence of facts that would have enabled her to state a cause of action for legal malpractice. The “act, omission, or neglect” complained of in Jenkins’ petition is Starns’ failure to file a responsive pleading in the Medlock case and Starns’ failure to appear and defend her at the April 16, 2007, hearing on the declinato-ry exceptions filed in response to her petition to annul judgment. Thus, the question before the Court is the date upon which Jenkins could reasonably discover the malpractice which triggered the running of the peremptive period. We find Jenkins had constructive knowledge of facts sufficient to state a cause of action against Starns when she received notice of the default judgment against her and Starns advised *534 her a mistake had been made in January of2007.
When Jenkins received notice of the default judgment, she was put on notice the trial court had ruled against her in the Medlock case. When presented with this information, Jenkins contacted Starns who informed her he had made a mistake and would try to fix it. Clearly, these two acts are sufficient to show Jenkins had constructive knowledge of facts that would entitle her to bring suit. This is especially true considering it was enough notice to excite \ ^attention and put her on guard to call for inquiry, which she did by contacting Starns. When Jenkins received the default judgment and made an inquiry to her attorney, she had constructive knowledge of: (1) the damage {fn. 4} in the form of an $8,563.33 judgment against her; (2) the delict, of Starns’ failure to file a responsive pleading; and (3) the relationship between Starns’ action and the resulting default judgment, which she learned when he told her he had made a mistake. We find Jenkins’ knowledge of the bad result coupled with the admission of counsel sufficient to put her on notice Starns was negligent in his representation and commenced the running of the one-year peremptive period. (Emphasis added).
Fn. 4. In Braud [v. New England Ins. Co., 576 So.2d 466 (La.1991)], this Court clarified:

Until the client suffers appreciable harm as a consequence of his attorney’s negligence, the client cannot establish a cause of action for malpractice. The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney’s negligence. Any appreciable and actual harm flowing from the attorney’s negligent conduct establishes a cause of action upon which the client may sue.

... Jenkins suffered damages when she received notice of the money judgment and learned the trial court had ruled in Medlock’s favor. (Emphasis added).
In the instant case, as noted above, the act of malpractice occurred when the law firm failed to find Carr’s judicial mortgage in the public records and issued its July 31, 2008, title opinion incorrectly stating that there were no prior liens or encumbrances on the Oaketree property. Damage to Gibsland began to occur when the bank issued its loan believing that it had the superior lien position on the property when in fact the bank’s position was subordinate to Carr’s judicial mortgage. However, the one-year peremptive period under La. R.S. 9:5605 did not begin to run at that time because Gibsland was unaware of the law firm’s negligence or the damage it had begun to cause the bank. Instead, the one-year peremptive [gperiod began to run in July 2009 when Gibsland received notice that Carr had filed suit and was seizing the Oaketree property based upon his claim that his mortgage outranked the bank’s security interest. In the bank’s July 31, 2009, letter to the law firm, it demonstrated actual knowledge that its superior property interest was in jeopardy (damage) as a result of the law firm’s failure to disclose the Carr judgment in its title opinion (negligent act). In this letter Gibsland further requested that the law firm attempt to remediate the matter as the bank had “cause for immediate concern.” Thereafter, in August 2009, the law firm informed the bank that it had contacted its legal malpractice insurer about a potential malpractice claim and had requested that an attorney be as *535 signed. Gibsland was aware of the law firm’s negligent conduct and had sustained appreciable and actual harm as evidenced by its July 31, 2009, letter. The trial court committed legal error in holding otherwise. La. R.S. 9:5605’s one-year peremp-tive period, which is not subject to suspension or interruption, began in July 2009, which is the point at which Gibsland had actual knowledge of facts that would lead it to understand that legal malpractice had occurred. Therefore, the bank’s action for legal malpractice, filed in April 2011, was untimely, and will be dismissed.

Conclusion

For the reasons set forth above, the judgment of the trial court denying the exception of prescription/peremption filed by defendants, Kitchens, Benton, Kitchens & Black (APLC), Melanie F. McCullough, and First Mercury Insurance Company, is REVERSED. We hereby RENDER ^judgment dismissing plaintiffs action with prejudice. Costs are assessed against plaintiff, Gibsland Bank and Trust Company.