# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 14, 2022

Lyle W. Cayce
Clerk

No. 21-30291

In re: W Resources, L.L.C.,

*Debtor*,

NCC Financial, L.L.C.,

*Appellant*,

*versus*

Investar Bank, N.A.;
W Resources, L.L.C. Liquidating Trust,

*Appellees*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:20-CV-137

Before Jones, Higginson, and Duncan, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-30291

In 2015, W Resources entered into an agreement with NCC Financial to secure debt to NCC Financial with a mortgage on properties owned by W Resources. But W Resources never incurred any debt to NCC Financial. After W Resources went bankrupt in 2018, W Resources Liquidating Trust ("the Trust") and Investar Bank, N.A. ("Investar") asked the bankruptcy court to disallow NCC Financial's proof of claim and declare its mortgage on the debtor's real property invalid and unenforceable. The bankruptcy court did so, and the district court affirmed. We AFFIRM.

## I. BACKGROUND

Michael Worley is the sole member and manager of W Resources, a Louisiana limited liability company. In the fall of 2015, Worley executed a personal Loan Agreement and Promissory Note in favor of NCC Financial, in return for $8 million. W Resources is not a borrower or signatory under either the Loan Agreement or the Promissory Note. Each agreement identifies the borrower, Worley, as "an individual."

The same day, NCC Financial executed a Multiple Indebtedness Mortgage (the "Mortgage") in favor of NCC Financial securing W Resources' debt to NCC Financial. The Mortgage identifies W Resources as the "Mortgagor," specifically defines the term "indebtedness" to mean "all obligations and liabilities of Mortgagor," and purports to encumber certain W Resources properties in and around East Baton Rouge Parish (the

2

No. 21-30291

"Mortgaged Properties"). W Resources is the sole signatory to the Mortgage.[2]

On July 23, 2018, W Resources filed a petition for Chapter 11 bankruptcy. *See In re W Resources, LLC*, Debtor, Bankruptcy Case No. 18-10798 (Bkrtcy. M.D. La.). In December 2018, NCC Financial filed a proof of claim in the case for over $8 million supported by the Mortgage, the Loan Agreement, and the Promissory Note. In the spring of 2019, Appellee Investar, which holds a secured interest in the Mortgaged Properties, initiated an adversary proceeding seeking a determination that its mortgages are first in priority.

The Trust and Investar sought summary judgment rejecting NCC Financial's unsecured and secured claims. Investar argued that because W Resources never owed NCC Financial anything, the Mortgage between W resources and NCC Financial was unenforceable as a matter of law because it secured nothing. Because the Mortgage is invalid, Investar argued, NCC Financial has no claim against W Resources.

Based on the parties' briefing, the bankruptcy court granted Investar's summary judgment motion in an oral ruling. It concluded that the Mortgage was clear and unambiguous and that it secured only debt of W Resources to NCC Financial. Because of the contract's clarity and the fact that creditors' rights are fixed at the moment the bankruptcy case is filed, the bankruptcy

---

[2] Despite executing the Mortgage, no party disputes that W Resources did not thereby incur any indebtedness to NCC Financial.

No. 21-30291

court rejected NCC Financial's efforts to introduce parol evidence to clarify or reform the mortgage. The bankruptcy court also held that NCC Financial's mortgage was unenforceable for a lack of any underlying indebtedness supporting the Mortgage. The court entered judgment accordingly, disallowing both the secured and unsecured claims.

NCC timely appealed to the district court, which affirmed on state law grounds. NCC timely appealed.

## II. Standard of Review

We review the decision of a district court that sat as an appellate court over a bankruptcy court decision by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court. *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003). A bankruptcy court's findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. *Id.*

## III. Discussion

NCC Financial argues that the Mortgage is valid and enforceable because it was intended to and actually does secure NCC Financial's loans to Worley by means of W Resources' properties.[3] NCC Financial seeks to offer parol evidence that allegedly reflects the parties' true intent and clarifies purported "ambiguities" in the Mortgage. NCC Financial objects to the

---

[3] LA Civ. Code Art. 3295 allows persons to mortgage their property to secure the debt of another.

application of the Louisiana Public Records Doctrine as a bar to its proposed clarification of the Mortgage. All in all, NCC Financial essentially seeks to reform the publicly recorded Mortgage to cover Worley's substantial debt.[4] What NCC Financial does not do is grapple with the iron rule of bankruptcy: creditor claims are fixed for allowance purposes as of the date of filing of the debtor's petition. See 11 U.S.C. §§ 506(b), 502(b)(1), 544(a). Even though we do not agree with every facet of the district court's opinion, the bankruptcy court's analysis of the impact of state law and the Bankruptcy Code was essentially correct.

We begin with the Bankruptcy Code. NCC Financial filed a timely proof of claim asserting both an unsecured and secured claim against the debtor based on Worley's Promissory Note and the Mortgage. 11 U.S.C. § 502(a) states that a claim against the debtor is deemed allowed unless objected to by the Trustee, which is exactly what the Trustee did here. Investar moved for a determination of the extent and priority of liens, and the Trustee took part in the proceeding to assert its disagreement with NCC Financial's position. Further, bankruptcy law provides that after notice and a hearing, the court must disallow claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). The bankruptcy court's ruling applied this provision along with Section 544(a), the Trustee's "strong-arm" power, to invalidate

---

[4] NCC Financial also raises a number of procedural issues that we need not address in light of the following analysis.

any liens or agreements that were unperfected or unenforceable as of the date of bankruptcy.[5]  The strong-arm power enables the Trustee to marshal the assets of the debtor as they existed at the date of bankruptcy, and that date furnishes a stable backdrop for valuing the assets according to the priorities established by the Bankruptcy Code and state law.[6]

NCC Financial's Mortgage was defective at the inception of bankruptcy because it reflected only an obligation to pay by W Resources, yet the debtor owed it nothing.  Louisiana law renders unenforceable such a mortgage that does not support an underlying obligation.[7]  Thus, NCC Financial's effort to enforce the Mortgage is doomed as a consequence of the strong-arm clause and Louisiana law.  This consequence is no different from the paradigmatic examples of the putative lienholder who inadvertently failed to record a mortgage or failed to perfect an Art. 9 security interest before the bankruptcy filing date.  *See* COLLIER ON BANKRUPTCY ¶ 544.05 (16th ed. 2019).  NCC Financial also did not cite any case, and we are aware of

---

[5] Although the bankruptcy court did not cite these provisions, the parties' pleadings were implicitly based on these provisions of the Bankruptcy Code, and the court referenced its inability to accede to NCC Financial's attempt to improve its position by obtaining a reformation of its Mortgage post-bankruptcy filing by W Resources.

[6] *See In re Robertson,* 203 F.3d 855, 864 (5th Cir. 2000)("Under [11 U.S.C.] section 544(a), the trustee has the right and power, as of the date of the commencement of the case, to avoid any lien or transfer avoidable by a hypothetical bona fide purchaser of real property of the debtor as of the date of the commencement of the case…The extent of the trustee's rights as a bona fide purchaser of real property, however, is measured by the substantive law of the state governing the property in question").

[7] LA Civ. Code Art. 3283 ("Mortgage is accessory to the obligation it secures. Consequently, except as provided by law, the mortgagee may enforce the mortgage only to the extent that he may enforce any obligation it secures").

none, that remotely resembles this one, in which a secured creditor was allowed to clean up its documentation and perfect an otherwise unenforceable claim post-bankruptcy.

Moreover, even if the Mortgage could be "cured" under bankruptcy law, neither the reference to "collectively" in the definition of "mortgagor"[8] nor the alleged "scrivener's error" that identified W Resources as the only obligor to NCC Financial renders the Mortgage ambiguous and thus even potentially within an exception to the parol evidence rule.[9] On its face, the Mortgage plainly references the debts, if any, of W Resources to NCC Financial. Such "clear and explicit" language does not permit further "search of the parties' intent" under Louisiana law. LA Civ. Code Art. 2046. And this is not a case in which the language leads to "absurd

---

[8] That Worley himself was identified as the "sole Managing Member" of W Resources LLC is legally distinct from his being individually bound as a mortgagor.

[9] Additionally, the Louisiana public records doctrine states that if a party does not record its interest in immovable property, the interest does not exist as against third parties. *See Cimarex Energy Co. v. Mauboules*, 40 So. 3d 931, 944 (La. 2010). Though third-parties are unable to rely on what is recorded, under the public records doctrine, third-parties can "rely . . . on the absence from the public record of those interests that are required to be recorded." *Camel v. Waller*, 526 So. 2d 1086, 1090 (La. 1988) (emphasis in original). W Resources, LLC, Liquidating Trust is a third-party, a bona fide purchaser for value and without notice, according to bankruptcy law, 11 U.S.C. 544(a)(3). *See Matter of Goodrich Petrol. Co.,* 894 F.3d 192, 197-99 (5th Cir. 2018), citing *In re Zedda,* 103 F.3d 1195, 1202 (5th Cir. 1997). Because the Liquidating Trust had the right to disregard the mortgage as to an unnamed borrower for purposes of disposing of the debtor's property, Investar's lien, like that of other lienholders on the affected properties, benefits from the non-enforceability of the NCC lien irrespective of how the parol evidence rule might otherwise apply. Further supporting Investar is La. Civ. Code Art. 3342, which states that parties to a recorded instrument may not contradict the terms of the instrument to the prejudice of a third person.

consequences." *Id.* Such an error is not necessarily a legal absurdity, as a state court determined in analogous circumstances. *JAB of Oakdale, LLC v. Oakwood Inn Dev. Corp.,* 2008 WL 597193 (La. App. 3d Cir. 2008). The bankruptcy court acknowledged that parol evidence might have been admissible outside of bankruptcy to demonstrate the incompleteness of the Mortgage, but that exception does not come into play in this bankruptcy case, where the rights of other creditors are involved and the strong-arm clause takes effect. The bankruptcy court did not explicitly mention the strong-arm clause here, but its relevance is unmistakable.

Having concluded that NCC Financial's infirm mortgage claim against this debtor is unenforceable by virtue of applicable bankruptcy law and certain provisions of Louisiana law, we need not consider whether the Mortgage also failed under the state's recording law.

The judgments of the bankruptcy and district courts are AFFIRMED.

No. 21-30291

Stephen A Higginson, *Circuit Judge*, dissenting:

I respectfully dissent from the majority's opinion affirming the district court's order granting summary judgment in favor of Investar. I would vacate the district court's order and remand the case for further proceedings.

I.

On October 27, 2015, Michael A. Worley and NCC Financial (NCC) executed a Loan Agreement. The Loan Agreement provides that NCC would loan Worley $8 million, which would be secured by, among other collateral, a mortgage on certain property in Louisiana (the Louisiana Property) owned by W Resources, L.L.C. Worley signed the Loan Agreement as an "individual." Worley also signed a Promissory Note in favor of NCC. Worley and NCC subsequently signed an Amendment to Loan Agreement, which increased the amount of NCC's loan to Worley to $9.5 million and reiterated that "[t]he Loan and Note are secured by, among other things, a Mortgage, Security Agreement and Financing Statement dated October 27, 2015 for the benefit of [NCC] on [the Louisiana Property]."

A document titled Multiple Indebtedness Mortgage (the Mortgage) was also signed on October 27. The Mortgage purports to grant NCC a mortgage on the Louisiana Property, which would "secure the . . . indebtedness." The Mortgage defines the term "[i]ndebtedness" to mean "all obligations and liabilities of Mortgagor to Mortgagee," and it stated that "W Resources, L.L.C., . . . represented herein by Michael A Worley, sole Managing Member," would be "referred to collectively as the 'Mortgagor.'" The Mortgage further states that the "Promissory Note from W Resources, LLC to NCC Financial, LLC dated as of October 27, 2015 in the principal amount of $8,000,000 . . . is secured by this Mortgage." Worley signed the Mortgage on behalf of W Resources in his capacity as "Managing Member." He did not sign the agreement as an individual.

W Resources did not incur any debt to NCC as a result of the Mortgage. However, Worley later testified in an affidavit that it was his "understanding and intent when signing the Multiple Indebtedness Mortgage on behalf of W Resources that W Resources and I were . . . mortgaging the Louisiana Property to secure any and all indebtedness owed to NCC by me personally or by W Resources." Worley also testified in the affidavit that he "understood when signing the Loan Agreement on October 27, 2015 that the original $8,000,000 loan made by [NCC] was specifically conditioned on W Resources, LLC granting NCC a mortgage on the [Louisiana Property]."

Kendrick James, the general counsel and chief operating officer of NCC, also submitted an affidavit testifying that the Mortgage was intended to secure Worley's personal debt to NCC. James explained that the Mortgage's reference to an $8 million promissory note from W Resources to NCC, rather than from Worley to NCC, was "an obvious scrivener's error."

On July 23, 2018, W Resources filed a petition for Chapter 11 bankruptcy. In December 2018, NCC filed a proof of claim against W Resources for $8,893,002.78. In support of its claims, NCC filed the Mortgage, the Loan Agreement, and the Promissory Note.

In May 2019, Investar Bank initiated an adversary proceeding in the bankruptcy court seeking to determine that its mortgage on the Louisiana Property is first in priority. Investar subsequently moved for partial summary judgment, seeking a declaration that the Mortgage is invalid and unenforceable.

The bankruptcy court granted the motion. The court determined that the Mortgage "purports to secure only indebtedness of . . . W Resources." However, the court explained, W Resources "has no obligation to NCC." Accordingly, the court concluded, "NCC's mortgage is not valid" under

Louisiana law, given its lack of an "underlying debt." The court declined to consider the parol evidence offered by NCC.

The district court affirmed, concluding that the Mortgage unambiguously does not secure the Loan Agreement or the Promissory Note and is accordingly invalid for lack of indebtedness. Like the bankruptcy court, the district court declined to consider NCC's parol evidence. NCC appealed.

## II.

"We review a district court's grant of summary judgment de novo." *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing grants of summary judgment, "[w]e view the evidence and draw reasonable inferences in the light most favorable to the non-movant." *Maddox*, 639 F.3d at 216.

The parties agree that Louisiana law governs the Mortgage. Under Louisiana law, a "[m]ortgage is accessory to the obligation that it secures. Consequently, except as provided by law, the mortgagee may enforce the mortgage only to the extent that he may enforce any obligation it secures." La. Civ. Code art. 3282; *see also Colonial Bank v. Marina Seafood Mkt., Inc.*, 425 So. 2d 722, 724 (La. 1983) ("[S]ince there exists no principal obligation owed by the defendant, the accessory obligation, the mortgage, must be invalid and unenforceable."). Relying on Article 3282, the district court concluded that "the Mortgage is unenforceable and invalid," reasoning that "the Mortgage depends upon a principal obligation for its *existence*, and here there is *no* principal obligation." The district court did not consider parol evidence that NCC submitted in support of its argument that the parties to the Mortgage intended that the Mortgage would secure Worley's personal debt to NCC.

No. 21-30291

I would hold that the district court erred by declining to consider NCC's parol evidence. After all, Louisiana law provides that "[i]nterpretation of a contract is the determination of the common intent of the parties," LA. CIV. CODE art. 2045, and NCC's parol evidence (in the form of the affidavits of Worley and James) was probative of that intent. And though Louisiana law generally provides that "[t]estimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature," LA. CIV. CODE art. 1848, the Louisiana Supreme Court has made it clear that "the 'parol evidence rule . . . applies only between parties to the act and their representatives and not between a party to the act and third persons.'" *Smith v. Chappell*, 148 So. 242, 246 (La. 1933).[1] Because this dispute is between a party to the Mortgage (NCC) and a non-party (Investar), the parol evidence rule simply does not apply.

The district court declined to consider NCC's parol evidence because it concluded that the Mortgage unambiguously does not secure Worley's personal debt to NCC. The district court relied on the following rule of contract construction: "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046. However, the Louisiana Supreme Court has explained that "an authentic act only binds parties to the act and their representatives in suits between the parties or their representatives. In any controversy, therefore, between a party to the act and a stranger, the party to the act is as free to avail himself of parol evidence for contradicting or varying the act as the stranger is." *Mitchell v. Clark*, 448 So. 2d 681, 686 (La. 1984) (internal quotation marks omitted) (citing *Smith*, 148

---

[1] *Smith* interpreted Louisiana Civil Code Article 2276, *see* 148 So. at 246, which has been recodified as Article 1848. *See* LA. CIV. CODE art. 1848 cmt. a.

12

So. 242; *Commercial Germania Trust & Savings Bank v. White*, 81 So. 753, 755 (La. 1919)). Thus, in disputes between a party to a contract and a third party, parol evidence is admissible to vary the terms of even an unambiguous contract. *See also* Frank L. Marist, Nolan J. Edwards, and Holt B. Harrison, 19 La. Civ. L. Treatise, Evidence and Proof § 6.3 (2d ed.) ("[P]arol evidence is admissible for or against a third party who was not in privity with the contracting parties." (citing *Mitchell v. Clark*, 431 So. 2d 817 (La. Ct. App. 2d Cir. 1983)).

Further, I do not agree with the district court that the Mortgage unambiguously does not secure Worley's personal debt to NCC. As explained above, the Mortgage: (1) purported to grant NCC a mortgage on the Louisiana Property, which would "secure the . . . indebtedness"; (2) defined the term "[i]ndebtedness" to mean "all obligations and liabilities of Mortgagor to Mortgagee"; and (3) stated that "W Resources, L.L.C., . . . represented herein by Michael A Worley, sole Managing Member," would be "referred to collectively as the 'Mortgagor.'" This language at least creates ambiguity as to whether the Mortgage secures Worley's obligations to NCC, as well as those of W Resources. Accordingly, even if I am reading *Smith* and *Mitchell* too broadly, Article 2046 does not prevent courts from considering parol evidence when interpreting this contract.[2]

---

[2] Alternatively, I would hold that Article 2046 does not apply to this dispute because it is absurd for a document purporting to be a mortgage not to secure any underlying debt. To the extent that *JAB of Oakdale, LLC v. Oakwood Inn Dev. Corp.*, 2007-1426 (La. App. 3 Cir. 3/5/08), 2008 WL 597193, held that such a situation is not absurd, this unpublished opinion from an intermediate court of appeals is not binding authority, and I do not find its reasoning persuasive.

III.

The majority concludes that "[a]ll in all, NCC Financial essentially seeks to reform the publicly recorded Mortgage," a violation of "the iron rule of bankruptcy: creditor claims are fixed for allowance purposes as of the date of filing of the debtor's petition." *Ante* at 5 (citing 11 U.S.C. §§ 506(b), 502(b)(1), 544(a)). The majority reasons that the Mortgage "was defective at the inception of bankruptcy because it reflected only an obligation to pay by W Resources," and it states that NCC has cited no cases "in which a secured creditor was allowed to clean up its documentation and perfect an otherwise unenforceable claim post-bankruptcy."

I take no issue with the majority's interpretation of the Bankruptcy Code. However, I note preliminarily that this was not the logic of the district court. More importantly, I disagree with the majority's statements that NCC seeks "to reform" the Mortgage, which was "defective at the inception of bankruptcy." Rather, I understand NCC to be arguing that parol evidence shows that, at the time the Mortgage was executed, NCC, Worley, and W Resources all intended for the Mortgage to secure Worley's personal debt to NCC. If NCC is correct, then the Mortgage is not "defective" and does not need to be "reform[ed]"; rather, it is and always has been valid. *See* La. Civ. Code art. 2045 ("Interpretation of a contract is the determination of the common intent of the parties."). Accordingly, I do not see the Bankruptcy Code as having relevance to the issue of whether the Mortgage is valid under Louisiana law, the only issue presented in this appeal.

In a footnote, the majority cites the Louisiana public records doctrine as an additional reason not to enforce the Mortgage against Investar's challenge. *Ante* at 7 n.9. However, under the public records doctrine, "errors in a recorded document do not automatically preclude the effectiveness of the document against third persons. The issue is whether a recorded

document provides 'sufficient notice' to a third party." *Carr v. Oaktree Apartments*, 46 So. 3d 793, 797-98 (La. Ct. App. 2010) (citation omitted). Here, the parties do not dispute that the Mortgage is recorded. Accordingly, the Mortgage is invalid under the public records doctrine only if the recorded instrument did not provide sufficient notice that the Louisiana Property was encumbered. "Determinations concerning the sufficiency of notice in the public records must be decided on a case-by-case basis. Such determinations are factual." *Id.* (citation omitted). I would instruct the district to consider on remand whether the Mortgage provided third parties with sufficient notice.[3]

## IV.

For the foregoing reasons, I would vacate the district court's order granting summary judgment in favor of Investar and remand the case to the district court for consideration of NCC's parol evidence, determination of whether the Mortgage provided sufficient notice, and other proceedings not inconsistent with this opinion.

---

[3] The majority also cites at the end of this footnote Louisiana Civil Code Article 3342, which provides, "A party to a recorded instrument may not contradict the terms of the instrument or statements of fact it contains to the prejudice of a third person who after its recordation acquires an interest in or over the immovable to which the instrument relates." Because, as explained above, I conclude that the Mortgage is ambiguous, I do not believe that Article 3342 applies to this case.